## ILLEGAL COMMITMENT BY A NOTARY FOR CONTEMPT.

Probate Court of Montgomery County.

STATE, EX REL CARL FOWLER, v. WILLIAM C. OLDT.

Decided, April 5, 1920.

*Depositions—Refusal of Witness to Answer Questions Propounded by a Notary Not Necessarily Contempt—Power of Notary to Commit for Refusal Limited to Refusal to Answer Proper Questions or Produce Papers Competent as Evidence—Examinations under Section 11497.*

A plaintiff, summoned to give his deposition in an action for damages for alienation of affections, is unlawfully committed for contempt in refusing to answer as to the source of information upon which he has based his suit.

ROUTZOHN, J.

This is an action in habeas corpus brought on relation of Carl Fowler against William C. Oldt, as Sheriff of Montgomery county, Ohio, seeking the release of said Fowler from the Montgomery county jail, to which place he was committed by S. N. Froehle, a notary public in and for said county, for contempt in refusing to answer a certain question propounded to him and for refusing to re-appear before said notary, when commanded so to do as alleged and more specifically set forth in the commitment.

A brief statement of the facts, sufficient for the present consideration of the cause, is as follows:

On the 25th day of March, A. D. 1920, relator by subpoena was caused to appear in the office of Egan & Delscamp, 803-4-5-6 Schwind Building, Dayton, Ohio, to testify, in a deposition sought to be obtained for use, as alleged, in a cause pending in the common pleas court of Montgomery county, wherein Carl Fowler is plaintiff and J. A. Guncheon is defendant and in which cause Fowler is asking for an award of damages against Guncheon because of the alleged alienation of the affections by Guncheon of Fowler's wife.

The notary before whom Fowler was subpoened to appear being absent at the time said deposition was to be taken, by agreement of counsel the notary, S. N. Froehle, was substituted, relator was sworn and the proceeding commenced.

The record of the proceeding, as set forth in the commitment, is as follows:

Examination by Mr. Delscamp:

Q.    You filed the petition against James A. Guncheon for alienation of affections in the court of common pleas, of Montgomery county, Ohio, on the 20th day of March, 1920, didn't you?

A.    Yes, sir.

Q.    In that petition you alleged that James A. Guncheon had induced your wife, Beatrice Fowler, to accompany or to meet him in Cincinnati, Ohio; is that right?

A.    Yes, sir.

Q.    Where did you get the information from? (Objected to.)

Mr. Delscamp:    All right I ask that he be committed to jail.

The question to which objection was made was then read to the witness.

The Notary:    You heard the question read there, do you refuse to answer?

Mr. Holland:    Yes, we refuse an answer that question.    If you want Mr. Fowler—If you want to send the sheriff over there you will find him in my office.

Mr. Delscamp:    We are not through with the deposition yet, we are not through with the testimony of Mr. Fowler yet on cross-examination.

Mr. Holland:    Well, go ahead with your deposition.

Thereupon the witness and his counsel left the office.

The testimony reveals that after the objection was made, a heated argument ensued between George F. Holland, attorney for Fowler and Irvin C. Delscamp, attorney for Gucheon, anent the competency of the question; that Mr. Delscamp asked no further questions, although requested by Mr. Holland to proceed, but insisted upon an answer to the question propounded; that instead of proceeding to question the witness further, Mr. Delscamp began to examine law books, presumably for the purpose of finding some law bearing upon the competency of the question, or of determining what method should be pursued in committing Fowler to jail.

After thus waiting about five minutes, according to the testimony of the notary, Mr. Holland and relator left, as above noted. The notary made no attempt to stop them from leaving, nor did he caution them not to do so.

This was about 2.30 p. m. About one hour thereafter the notary phoned Mr. Holland, who, with relator, was at his office, and asked if relator would return to answer the question, but met with a refusal.

Between five and five-thirty p. m., the notary again phoned Mr. Holland and demanded Fowler to return and answer the question, with the same result; whereupon the commitment was issued and Fowler was incarcerated in the jail.

Was Fowler guilty of contempt by reason of his refusal to answer the propounded question?

The notary, in this instance, was acting within his rights, by virtue of his office and the agreement herinbefore mentioned, in the taking of the deposition; at least, no claim is made to the contrary.

In granting authority for the enforcement of those rights, Section 11510 of the General Code provides:

"Disobedience of a subpoena, a refusal to be sworn, except upon a failure to pay fees duly demanded, and *an unlawful refusal* to answer as a witness or to subscribe a deposition, may be punished as a contempt of the court or officer by whom the attendance or testimony of the witness is required."

The court in quoting this statute has emphasized the words "an unlawful refusal."

It is well known that the officer who takes a deposition has no authority to pass upon the relevancy or competency of a propounded question; this must be left of the court before whom the cause is to be tried.

The language of the section quoted implies that it may not be unlawful for a witness to refuse to answer certain questions.

In accordance with this implication, or rather qualification of the officer's authority to punish a witness for refusing to answer, the Supreme Court of Ohio has held:

"A witness whose deposition is being taken before an officer cer may refuse to testify to facts not relevant to the issues in the case in which the deposition is to be read, if the disclosure of such irrelevant facts would be injurious to the business of the witness; and, imprisoned by the officer for such a refusal, he may be discharged on habeas corpus. *Ex Parte Malcolm Jennings*, 60 Ohio State, 319.

In this case the prisoner was discharged, having been committed to jail for refusing to answer certain questions which the Supreme Court found to be irrelevant.

In the opinion, page 329, Shauck, J., states "the settled law on the subject" by quoting from Church on habeas corpus, section 319:

"The law has not investigated such officers (notaries public) with arbitrary and omnipotent power to compel a witness to answer all questions however incompetent, irrelevant, immaterial or inadmissible. A refusal to answer such questions is not necessarily a contempt. To have power to commit for contempt, the notary must exercise his functions substantially in the manner and under the circumstances prescribed and contemplated by law. It has, therefore, been held that a witness will be discharged on habeas corpus where he has been committed for contempt by a notary public for failure or refusal to produce papers and testimony that are incompetent and inadmissible."

The court has carefully and conscientiously examined numerous authorities, including those cited by counsel on both sides, and they all substantiate the above quoted rule of law.

Having in mind the issues involved in the case of Fowler against Guncheon, the cause for which this deposition was

being taken, the court finds that the question which Fowler refused to answer and for which refusal he was committed for contempt was irrelevant and immaterial, and, therefore, an incompetent question.

In addition, this court feels that Fowler acted wisely and within his rights in refusing to divulge the names of the witnesses upon whom he might be compelled to rely for testimony in substantiation of the allegations of his petition and the successful prosecution of his cause of action.

The fact that by divulging the names of his witnesses Fowler might be injured in the prosecution of his cause is so obvious that further comment is not required.

Besides, the court, in so finding, is fortified by a recent decision of the Supreme Court, in a case wherein the facts and finding are strikingly similar.

It is to be found in *Ex Parte Schoepf*, 74 Ohio State, page 1. The fourth syllabus, page 2, reads as follows:

"While an officer before whom a deposition is being taken is empowered to punish as for contempt any person who refuses to obey an order to answer a question or to produce a document, he can not do so unless it is so "lawfully ordered;" and where such question or document is not pertinent to the issues tendered or made, or is not material or necessary to make out the case of the party calling for it, or is incompetent or privileged, the witness can not lawfully be ordered to answer such question or to produce such document."

In that case, the deposition was being taken ostensibly to be used in an action for personal injuries instituted in the common pleas court of Hamilton county by one Josephine Pace against the Cincinnati Traction Company.

The person incarcerated for contempt was the claim agent of the defendant company, and the deposition was being taken on behalf of plaintiff.

The witness testified that he had in his possession certain reports of the accident, containing the names and statements of the witnesses to same.

When asked to produce them, he refused. This was one ground of the alleged contempt.

He was also asked the following questions, all of which he refused to answer and for which refusal also the notary held he was in contempt.

Q. "On the seventeenth of May, 1902, a woman fell or was thrown off a car belonging to the Cincinnati Traction Company, at or near the corner of Oak and Belmont streets, College Hill; who was the conductor in charge of this car?

Q. Do you know the name of this conductor.

Q. Do you know the name of the motorman on this car?

Q. Were there any other persons on this car besides the plaintiff, conductor and motorman?

Q. Were there any persons that you know of, besides the plaintiff, conductor and motorman present at the time of the accident and who witnessed it?

Q. Who was the division superintendent in May, 1902, of the division to which College-Hill-Main line belonged?"

The Supreme Court in this case found that the production of the document was not material and necessary to the plaintiff's case; that the questions were incompetent, immaterial and irrelevant; that the purpose was to compel the defendant to disclose before the trial the sources of its information and the names of its possible witnesses and discharged the petitioner.

Was Fowler guilty of contempt in refusing to re-appear before the notary when the demand was made, by the notary on counsel, Mr. Holland?

As heretofore stated, no objection—no serious objection, at least—was made as to his leaving the office; furthermore he is not charged with contempt for leaving the office without permission.

Mr. Delscamp has been requested to continue with the cross-examination, but he refused to question the witness further until the one particular question was answered.

The facts bear out the inference that the remainder of the afternoon following Fowler's departure was occupied by the notary and Mr. Delscamp in drafting the commitment papers.

Also, the request that Fowler re-appear was accompanied with the notary's demand that he answer the one question which he had refused to answer.

There is nothing in the commitment, nor in the testimony, by which anything else can be inferred but that sole desire to have Fowler re-appear was to compel him to answer the question which had already been propounded.

A different procedure is provided for compelling a witness to obey a subpoena. Section 11511 of the General Code provides, in part, that

"When a witness fails to obey a subpoena personally served, the court or officer, before whom his attendance is required, may issue to the sheriff, coroner, or a constable of the county, an attachment, commanding him to arrest and bring the person named therein before such court or officer at the time and place the writ fixes, to give his testimony and answer for the contempt."

Section 11518 of the General Code provides:

"While a prisoner's deposition is being taken, he shall remain in the custody of the officer having him in charge, who shall afford reasonable facilities for the taking of the deposition."

This procedure was not followed in Fowler's case. The law as well as the method of compelling his appearance is clear and should have been strictly followed. The law does not sanction arbitrary power and will not permit a man to be deprived of his liberty without due process of law.

The court having determined that Fowler is unlawfully deprived of his liberty, he is hereby discharged.